UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRIDGET HERRON,

    Plaintiff,

v.                               ACTION NO. 2:15cv470

SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Bridget Herron ("Herron"), proceeding pro sé, seeks to challenge a potential reduction of her supplemental security income ("SSI"). Specifically, Herron claims that when she marries, the Social Security Administration (the "SSA") will include her husband's income when calculating her SSI benefits, and because of this the SSA will reduce her benefits. The SSA moved to dismiss Herron's Complaint, and Herron filed several motions, which in the aggregate constitute her reply in opposition to the SSA's motion. This action was referred to the undersigned United States Magistrate Judge pursuant to provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this report recommends that the court grant Herron's evidentiary motions (ECF Nos. 16, 17), grant the SSA's Motion to Dismiss (ECF No. 11), deny Herron's "Motion Not to Dismiss" (ECF

1

No. 14), and dismiss her claims.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Herron started receiving SSI benefits in May 1995, and to date, she continues to receive these benefits.[1] Decl. of Kathie Hartt ¶¶ 2-3 (ECF No. 12-1, at 1).   In the present lawsuit, Herron alleges that after her engagement on December 25, 2014, she and her fiancé went to the SSA office in Norfolk, Virginia, to discuss the consequences of their marriage on her SSI benefits.   Compl. ¶ 4 (ECF No. 7, at 1).   After providing financial information to a case worker, she was told that if she married her fiancé, "[her] SSI disability would be cut to $200 per month regardless of ... expenses of rent and utility expenses."   Id.   Herron then filed the present lawsuit on November 13, 2015, alleging that the SSA will reduce her benefits if she marries.   Id. ¶¶ 3-4.

After filing suit, Herron and her fiancé, Fredrick Toole, married on December 21, 2015.   Marriage License (ECF No. 17-1). To date, neither Herron, nor the SSA, have proffered any information suggesting that Herron's benefits have been reduced following her marriage.   Additionally, to date, Herron has not received any decision from the Commissioner of the SSA regarding

---

[1] Consistent with the appropriate standard of review, the recited facts are drawn from Herron's Complaint, and the other pleadings in this case, and taken as true for purposes of these motions.   See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

her SSI benefits.  Decl. of Kathie Hartt ¶¶ 2-4 (ECF No. 12-1, at 1).

On December 28, 2015, the defendant filed a motion to dismiss the Complaint, arguing that Herron's claims are not properly before the court and even if the court were to reach the merits of her claim, she fails to state a claim for relief. (ECF No. 12, at 1-2).  Herron then filed a response to the defendant's motion, styled "Motion Not to Dismiss Lawsuit." (ECF No. 14).  She also filed two evidentiary motions asking the court to accept as evidence the declaration of her fiancé, Fredrick Toole, (ECF No. 16) and her marriage license, (ECF No. 17).  Construing Herron's motions as her response to the defendant's motion to dismiss, this matter is ripe for review.

## II.  ANALYSIS

### A.  Herron Failed to Obtain a Final Decision From the Commissioner, and Her Claims Are Not Properly Before the Court.

To obtain review in federal court, the court must have subject matter jurisdiction over the case.  That is, "[t]he federal courts are courts of limited subject matter jurisdiction, and 'are empowered to hear only those cases that (1) are within the judicial power of the United States and (2) that have been entrusted to them by a jurisdictional grant by Congress.' " Hill v. Colvin, No. 1:14CV354, 2016 WL 727177, at

3

*3 (M.D.N.C. Feb. 23, 2016) (quoting 13 Charles Alan Wright et al., Federal Practice and Procedure Juris. § 3522 (3d ed. 2015)). When determining whether subject matter jurisdiction is proper, "[t]he burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). A court should grant a motion to dismiss for lack of subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Hill, No. 1:14CV354, 2016 WL 727177, at *4.

In order for a federal court to have jurisdiction to review a social security benefits claim, a plaintiff must first exhaust administrative remedies. 42 U.S.C. § 405(g); Heckler v. Ringer, 466 U.S. 602, 617 (1984); Weinberger v. Salfi, 422 U.S. 749, 763-64 (1975). That is, "Congress has provided that the district courts only have subject matter jurisdiction over claims arising under the Social Security Act in the manner described in 42 U.S.C. § 405(g), as limited by 42 U.S.C. § 405(h)." Hill, No. 1:14CV354, 2016 WL 727177, at *5. Specifically, § 405(g) provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in

4

> controversy, <u>may obtain a review of such decision by a
> civil action</u> commenced within sixty days after the
> mailing to him of notice of such decision or within
> such further time as the Commissioner of Social
> Security may allow.

42 U.S.C. § 405(g) (emphasis added).   Section 405(h) further

limits federal courts' review of social security benefits,

providing that:

> [n]o findings of fact or decision of the Commissioner
> of Social Security shall be reviewed by any person,
> tribunal, or governmental agency except as herein
> provided.   No action against the United States, the
> Commissioner of Social Security, or any officer or
> employee thereof shall be brought under section 1331
> or 1346 of Title 28 to recover on any claim arising
> from this subchapter.[2]

<u>Id.</u> § 405(h) (emphasis added).   Therefore, as set forth in the

Social Security Act, a plaintiff must obtain a final decision

from the Commissioner before seeking review in federal court.

To obtain a final decision from the Commissioner, a

plaintiff must complete a four-step administrative review

process.   20 C.F.R. § 416.1400.   This four-step process "usually

must be requested within certain time periods and in the

following order."   <u>Id.</u>   First, an initial determination is made

about a claimant's "eligibility for, or the amount of,"

benefits.   <u>Id.</u> § 416.1402(a); <u>see id.</u> § 416.1400(a)(1).   Second,

---

[2] 28 U.S.C. § 1331 provides that "[t]he district courts shall have
original jurisdiction of all civil matters arising under the
Constitution, laws, or treaties of the United States." And, 28 U.S.C.
§ 1346 provides for federal jurisdiction when the United States is the
defendant in a lawsuit.   As set forth in 42 U.S.C. § 405(h), these
statutes do not establish subject matter jurisdiction for an action
arising under the Social Security Act.

if a claimant is "dissatisfied with an initial determination," she may ask for reconsideration. Id. § 416.1400(a)(2). Third, a claimant may request a hearing before an administrative law judge if she is "dissatisfied with the reconsideration determination." Id. § 416.1400(a)(3). Fourth, "if [a claimant] is dissatisfied with the decision of the administrative law judge, [she] may request that the Appeals Council review the decision." Id. § 416.1400(a)(4). A decision from the SSA is final only after completing this four-step process, and "if [a claimant is] dissatisfied with [the] final decision, [she] may request judicial review by filing an action in a Federal district court." Id. § 416.1400(a)(5).

Here, the SSA argues that the pleadings, including Herron's Complaint, show that she did not complete the administrative review process and did not receive a final decision from the Commissioner. (ECF No. 12, at 4-5). A review of Herron's Complaint and other documents in the record confirms that she failed to exhaust her administrative remedies. See Compl. ¶¶ 3, 8-9 (ECF No. 7, at 1-2); Decl. of Kathie Hartt ¶¶ 4-5 (ECF No. 12-1, at 1). Specifically, Herron states that she "wants to file a lawsuit for the maintenance of her SSI benefits." Compl. ¶ 2 (ECF No. 1, at 1) (emphasis added). Her Complaint, however, makes no mention of any determination regarding her benefits from the SSA. That is, she states that a "case worker told

6

[her] that [her] SSI disability <u>would</u> be cut" if she were to marry. <u>Id.</u> ¶ 4 (emphasis added). But besides this statement, Herron proffers no evidence indicating that she sought review by the SSA as to her social security benefits. Moreover, by her own admission, Herron was not married when she filed this lawsuit, and her marriage took place less than three months ago, on December 21, 2015. <u>Id.</u> ¶ 3; Marriage License (ECF No. 17-1). Her marriage does not change this report's analysis.[3] Based on a review of the record in this case, the undersigned concludes that Herron did not exhaust her administrative remedies as required by 42 U.S.C. § 405(g) & (h).

A plaintiff who fails to exhaust the SSA's administrative remedies may still obtain review in federal court if she raises "a colorable constitutional claim." <u>Chong Su Yi v. Soc. Sec. Admin.</u>, 80 F. Supp. 3d 666, 670 (D. Md. 2015). Specifically, under 20 C.F.R. § 416.1400(a)(6), a claimant may seek an expedited review from a federal court if after the <u>initial determination</u>, a claimant has "no dispute with [the SSA's] ... findings of fact and ... application and interpretation of the controlling laws," but instead seeks to challenge the constitutionality of the law." 20 C.F.R. § 416.1400(a)(6).

---

[3] On January 15, 2016, Herron sought to supplement the record with a declaration from her fiancé, Fredrick Toole, (ECF No. 16) and a copy of her marriage license (ECF No. 17). The Defendant did not object to the admission of these documents, and the undersigned recommends that the court grant Herron's motions (ECF Nos. 16, 17) to supplement the record.

"The constitutional claim, however, must be entirely collateral to the substantive claim for benefits, such as claims challenging the system-wide failure to follow applicable regulations or claims seeking to invalidate a rule used to determine eligibility for benefits." Chong Su Yi, 80 F. Supp. 3d at 671 (citing Bowen v. City of New York, 476 U.S. 467, 483-84 (1986)).

Here, Herron has not even received an initial determination, which is required before a federal court grants expedited review of a social security benefits claim. Moreover, looking at the merits of Herron's claims, she asserts that the policies of the SSA unconstitutionally limit her right to marry and result in "religious persecution and unequal protection under the law for women heterosexuals." Compl. ¶ 2 (ECF No. 7, at 1). She also claims that she will "still meet the Federal poverty guidelines after marriage." Id. ¶ 4. Although Herron references constitutional principles and her claims arguably challenge the constitutionality of parts of the Social Security Act, her goal is to maintain her benefits – to which she is not constitutionally entitled. As discussed in greater detail below, Herron fails to state a claim challenging the constitutionality of the SSA's policies, and she is therefore not entitled to expedited review from a federal court.

Herron did not exhaust her administrative remedies as required by 42 U.S.C. § 405(g), and she fails to show that her claims meet the requirements for an expedited appeals process. The court should therefore dismiss Herron's claims because the court lacks subject matter jurisdiction over her case. <u>See</u> Fed. R. Civ. P. 12(b)(1).

B.   **Herron's Complaint Fails to State a Claim as to the Unconstitutionality of the SSA's Policies.**[4]

1.   **Standard of Review**

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading fails to meet this standard and is subject to dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content "that allows the court to draw the reasonable

---

[4] Although Herron has not received a final decision from the Commissioner, and this court likely lacks jurisdiction over her case, this section discusses the merits of her claims because if she stated a colorable constitutional claim, she would be entitled to expedited review by a federal court. Upon review of her claims, this report concludes that she does not state such a claim, and therefore she is not entitled to expedited review. Moreover, because she fails to state a claim for relief, if the court were to reach the merits of her claims, the court should also dismiss her claims.

inference that the defendant is liable for the misconduct alleged." Id. "Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable. Twombly, 550 U.S. at 555. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not state a claim. Iqbal, 556 U.S. at 678.

The United States Supreme Court has described the motion to dismiss analysis in two parts. First, the court must accept the allegations of fact as true. Id. However, a court is not required "to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations, Iqbal, 556 U.S. at 678-79. After reviewing the allegations, the court must then consider whether they are sufficient to state a plausible claim for relief. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A Rule 12(b)(6) motion, then, should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim

entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

> 2. **Herron's Constitutional Rights Are Not Infringed by the SSA's Potential Reduction of her SSI Benefits.**

Herron claims that the SSA's policies constitute "religious persecution" and provide "unequal protection under the law for women heterosexuals, who desire to marry." Compl. ¶ 2 (ECF No. 7, at 1). Specifically, Herron appears to argue that the SSA's policies infringe her fundamental right to marry, prevent her from the free exercise of her religious beliefs, and discriminate against married women. In response, the SSA asserts that Herron's claim to SSI benefits is not constitutionally protected, and a reduction in SSI benefits based on her marriage does not infringe her constitutional rights. (ECF No. 12, at 7-9).

As to whether the SSA's policies infringe Herron's right to marry, the United States Supreme Court recognizes the right to marry as a fundamental right, and when a classification "significantly interferes with the exercise of that right," a "'critical examination' of the state interests advanced in support of the classification is required." Zablocki v. Redhail, 343 U.S. 374, 383 (1978) (discussing Loving v. Virginia, 388 U.S. 1 (1967)). However, even when a right is categorized as fundamental, "a legislature's decision not to

subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." <u>Regan v. Taxation Without Representation of Washington</u>, 461 U.S. 540, 549 (1983) (emphasis added).   In the context of determining social security benefits, the United States Supreme Court has held that it is "rational for Congress to assume that marital status is a relevant test." <u>Califano v. Jobst</u>, 434 U.S. 47, 54 (1977) (discussing social security benefits in the context of child's insurance benefits).   That is, the rational basis test[5] applies, and using marital status in this context does not render a rule invalid "simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby." <u>Id.</u>

Here, Herron attempts to challenge the SSA's deeming policy, which is "the process of considering another person's income to be your own." 20 C.F.R. § 416.1160(a). Specifically, under the SSA's deeming policy, if the claimant lives in the same household as her ineligible spouse – someone who is not eligible for SSI benefits - the SSA "look[s] at [the] spouse's income to decide whether [it] must deem some of it to [the claimant]." <u>Id.</u> § 416.1160(a)(1). The rationale is that the spouse will "use some of his or her income to take care of some

---

[5] Under the rational basis test, a "regulatory scheme [must] bear[] a rational relationship to legitimate legislative goals." <u>Smith v. Shalala</u>, 5 F.3d 235, 239 (7th Cir. 1993).

of [the claimant's] needs." Id.; see id. § 416.1163 (describing how the SSA deems income to a claimant from an ineligible spouse). Moreover, when the deeming rules apply, "it does not matter whether the income of the other person is actually available to [the claimant]," and the SSA "must apply these rules anyway." Id. § 416.1160(a).

With regard to Herron's claims about her fundamental right to marriage, the SSA's deeming rules - which require the SSA to include Herron's spouse's income when calculating her benefits - do not prevent her from marrying, and the rules do not limit her right to marry. That is, even if the SSA's policies create financial implications for Herron's marriage, she still has the ability to marry - even if she does not like the financial consequences of that decision. Because the SSA's rules do not infringe her fundamental right to marry, the rules must simply be rationally related to a legitimate government interest. See, e.g., Jobst, 434 U.S. at 53-54 ("Both tradition and common experience support the conclusion that marriage is an event which normally marks an important change in economic status....[And] it was rational for Congress to assume that marital status is a relevant test."); Smith, 5 F.3d at 239-40 (holding that the "deemed married" classification in the context of two eligible spouses applying for social security benefits is rationally related to the asserted government interests).

Moreover, to the extent that Herron asserts that the SSA's policies require her to compromise her religious beliefs by forcing her to live with her fiancé before marriage, she also fails to state a claim for relief.  The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I (emphasis added).  As to the protection of the free exercise of religion, the United States Supreme Court has held "that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."  Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993).  That is, "[a]t a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons."  Id. at 532 (emphasis added).

As to Herron's allegation that the SSA policies interfere with the free exercise of her religious beliefs, the SSA determines benefits based on income, and the policies were not "undertaken for religious reasons."  See id.  If Herron wishes to marry in accordance with her religious beliefs, the SSA's policies do not prevent her from doing so.  Because Herron fails

to allege facts sufficient to challenge the rationality of the SSA's policies, she fails to plausibly allege the elements of a violation of her constitutional rights as to her right to marry and her right to the free exercise of her religious beliefs.

Herron's final argument is that the SSA's policies impermissibly distinguish between married and unmarried persons, which creates "unequal protection under the law." See Compl. ¶¶ 1, 8 (ECF No. 7, at 2) ("The Plaintiff is just as much responsible for paying 50 percent of the household expenses as her future husband Mr. Toole.  This is a right that every woman who receives benefits from Social Security Administration must have.").  Although as a general rule, a "benefited class" may not be defined by "reference to a distinction which irrationally differentiates between identically situated persons," "a distinction between married persons and unmarried persons is of a different character." Jobst, 434 U.S. at 53.  Moreover, the United States Supreme Court has held that "a noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status ... though of course Congress may not invidiously discriminate among such claimants on the basis of a 'bare congressional desire to harm a politically unpopular group,' or on the basis of criteria which bear no relations to a legitimate legislative goal." Salfi, 422 U.S. at 772 (emphasis added) (citations omitted).

Here, the SSA policies at issue are not aimed at discriminating against any groups - either popular or unpopular. Because of this, the policies simply must be rationally related to legitimate goals set forth by Congress. As to legislative goals in this context, "Congress has determined that two people can live together more cheaply than one and, therefore, in furthering the apportionment and distribution of supplemental security income and assessing the financial needs of potential claimants, has determined that marriage ... is a reasonable indicator of ... a lowered cost of living." Smith, 5 F.3d at 240. Because the United States Supreme Court has held that Congress' use of marital status to calculate financial need for social security benefits is reasonable, to state a claim for relief, Herron needed to allege that the policy was not rationally related to this legislative interest. Moreover, as the party "attacking the rationality of [a] legislative classification," Herron would have "the burden 'to negative every conceivable basis which might support it.' " F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993) (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)). She fails to do this because she does not provide any explanation as to why the SSA should not take her income, and deemed income from her husband, into account when calculating her benefits.

Accordingly, if the court were to reach the merits of Herron's claims, she fails to state a claim alleging that the SSA's policies violate her constitutional rights. And, because she fails to state a constitutional claim for relief, she is also not entitled to expedited review of her claims.

### III. <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned recommends that the court GRANT Herron's evidentiary motions (ECF Nos. 16, 17) in which she seeks to admit into the record her fiancé's declaration and her marriage license, GRANT the SSA's Motion to Dismiss (ECF No. 11), DENY Herron's "Motion Not to Dismiss" (ECF No. 14), and DISMISS her claims without prejudice for lack of jurisdiction.

### IV. <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

17

2.    A district judge shall make a _de novo_ determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk shall mail a copy of this report to the plaintiff and to counsel of record for the defendant.

                                   /s/
                        Douglas E. Miller
                        United States Magistrate Judge
                        _____
                        DOUGLAS E. MILLER
                        UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
March 10, 2016

18

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to:


**Bridget Herron**
171 West Balview Ave., Apt. 8
Norfolk, VA 23503

and an electronic copy was provided to:

**Kent Pendleton Porter**
United States Attorney's Office
101 W. Main St., Suite 8000
Norfolk, VA 23510


                                    Fernando Galindo, Clerk


                                    By_____E. P._____
                                          Deputy Clerk

                                    _____3/11/2016____, 2016